# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

ALASKA TROWEL TRADES PENSION TRUST, ALASKA TROWEL TRADES APPRENTICESHIP & TRAINING FUNDS, and the ALASKA LABORERS-CONSTRUCTION INDUSTRY HEALTH & SECURITY FUND

Plaintiffs,

v.

RADY CONCRETE CONSTRUCTION, LLC, and RONALD WILLIAM RADY, JR.,

Defendants.

Case No. 3:15-cv-00061-SLG

## ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT

Before the Court are Plaintiffs' and Defendants' Cross-Motions for Summary Judgment, at Dockets 20 and 34, respectively. The motions are fully briefed,[1] and oral argument was held on August 11, 2016.[2]

## BACKGROUND

Plaintiffs Alaska Trowel Trades Pension Trust, Alaska Trowel Trades Apprenticeship & Training Funds, and Alaska Laborers-Construction Industry Health & Security Fund (collectively, the "Trust") have brought this suit against Rady Concrete Construction, LLC ("Rady Concrete") and its owner, Ronald Rady. Rady Concrete entered an agreement with a labor union. Pursuant to that agreement, Rady Concrete was obligated to make certain contributions to the Trust on behalf of its employees. The

---

[1] *See* Docket 33 (Defendants' Opp.); Docket 41 (Plaintiffs' Reply); Docket 39 (Plaintiffs' Opp.). Defendants did not file a reply to Plaintiffs' Opposition.

[2] *See* Docket 43.

Trust brought this action against Rady Concrete under the Employee Retirement Income Security Act (ERISA) to recover required contributions that the Trust alleges were wrongfully withheld.[3]

Many of the key facts in this case are not in dispute, but some are insufficiently developed at this juncture. Rady Concrete has done construction work primarily in the Fairbanks, Alaska region.[4] It is undisputed that in 2009, Rady Concrete entered into a "Compliance Agreement" with Operative Plasterers & Cement Masons International Association and its Affiliated Local Unions.[5] Pursuant to this agreement, Rady Concrete agreed to abide by a Collective Bargaining Agreement (CBA) that was incorporated by reference. Also not in dispute is that on the Compliance Agreement are handwritten the words "Single job agreement AHFC Fairbanks Site Improvements."[6] The parties do dispute, however, the legal import of this handwriting.

The parties agree that subsequent to the completion of the AHFC Fairbanks Site Improvements project, Rady Concrete continued to make some payments for fringe benefits as contemplated by the CBA, but ceased making those payments after December 2014.[7] And although it is undisputed that Mr. Rady himself, acting as CEO of

---

[3] *See* Docket 1 (Compl.) at ¶ 17.

[4] Plaintiffs' Motion is limited to establishing liability against Rady Concrete, and does not seek summary judgment against Mr. Rady. *See* Docket 21 at 2.

[5] *See* 24-1 (Ex. A, Compliance Agreement) at 1; *see also* Docket 22 (Aff. of Thomas Frohlich) at ¶ 3.

[6] So much is plain on the face of the document. At oral argument it was suggested that another copy of the agreement exists without this addition, but neither party contends that this other copy is the legally binding document.

[7] *See* Docket 22 (Frohlich Aff.) at ¶ 7; Docket 23 (Aff. of Gregg Giles) at ¶¶ 6-7.

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 2 of 17

Rady Concrete, signed some of the many remittance reports that accompanied these payments, it is also undisputed that he did not sign them all.[8] But the parties again dispute the legal consequences of these undisputed facts.

Also uncontested is that, as a result of these payments, the Trust has provided certain benefits to Rady Concrete's employees, including to Mr. Rady himself.[9]

## DISCUSSION

### I. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under ERISA, 29 U.S.C. §§ 1132, 1145.

### II. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact lies with the moving party.[10] If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[11] The non-moving party may not rely on mere allegations or denials.[12] Rather, that party must demonstrate that enough

---

[8] *See* 24-4 (Ex. D, Remittance Reports).

[9] *See* Docket 23 (Giles Aff.) at ¶¶ 3-5.

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[12] *Id.* at 248–49.

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 3 of 17

evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[13]

When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[14] When faced with cross-motions for summary judgment, a court "review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences."[15] To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[16] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[17]

### III. Liability

The Trust maintains that Rady Concrete's liability is premised on either the original June 2009 Compliance Agreement, Rady Concrete's subsequent conduct, or on the remittance forms that accompanied subsequent payments to the Trust. Defendants respond that the Compliance Agreement is limited to a single job, and that, accordingly, Rady Concrete is entitled to recover all of the subsequent payments it made to the Trust

---

[13] *Id.* (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968)).

[14] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[15] *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (citing *Ctr. for Bio–Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008)).

[16] *Anderson*, 477 U.S. at 248.

[17] *Id.* at 249.

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 4 of 17

that were not pursuant to that particular agreement. The Court will address each contention in turn.

*A. Compliance Agreement*

Plaintiffs argue in their motion for summary judgment that the June 1, 2009 Compliance Agreement was binding on Rady Concrete as to all future jobs, and that under that agreement Rady Concrete is obligated to make payments to the Trust for all subsequent projects. Rady Concrete counters that this was a "single-job agreement," limited to the single project completed in 2009, which cannot form the basis of liability for payments beyond that project. In their reply brief, Plaintiffs respond that there is a material dispute as to the scope of that agreement and therefore acknowledge that they are not entitled to summary judgment on these grounds.[18] However, the Court finds for the reasons below that as a matter of law the June 2009 Compliance Agreement was limited to a single job and cannot form the basis of liability for subsequent payments.

"When reviewing an ERISA policy," courts are to "apply contract principles derived from state law . . . guided by the policies expressed in ERISA and other federal labor laws."[19] Accordingly, the Court must "look to the agreement's language in context and construe each provision in a manner consistent with the whole such that none is rendered nugatory."[20] The Court "will not artificially create ambiguity where none exists."[21] And

---

[18] *See* Docket 41 at 1-2.

[19] *Dupree v. Holman Prof'l Counseling Centers*, 572 F.3d 1094, 1097–98 (9th Cir. 2009) (quoting *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007)).

[20] *Dupree*, 572 F.3d at 1097.

[21] *Dupree*, 572 F.3d at 1097 (quoting *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir.

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 5 of 17

where there is no ambiguity in the text of the contract, there is no reason to consider extrinsic evidence, such as subsequent conduct.[22]

According to Plaintiffs, the Compliance Agreement binds Rady Concrete in perpetuity because it states it "shall remain in full force and effect for the period of three years'" and shall, absent objection, "continue from year to year" thereafter.[23] And, Plaintiffs assert, Rady Concrete never took any action to terminate the contract. But the disputed issue is not the length of the agreement but rather its scope. As Defendants point out, the agreement specifies, in handwriting, that it is for a "Single job agreement AHFC FAIRBANKS SITE IMPROVEMENTS." Thus, whatever the length of the agreement, Defendants assert, it was never intended to apply beyond work on that one specified project.

Plaintiffs attempt to undermine this writing by referring to it as only a "hand written notation," which they note was "made in the space which is allocated in the Compliance Agreement solely for **NAME** of the contractor," and was "not made in the CBA to which Rady Concrete agreed to be bound."[24] But in the Court's view, this misses the mark. First, any handwritten terms supersede typed terms.[25] And second, while the CBA details

---

1990)).

[22] *See Pierce Cty. Hotel Employees and Restaurant Employees Health Trust v Elks Lodge, BPOE No. 1450*, 827 F.2d 1324, 1327 (9th Cir. 1987) (holding that the district court "correctly disregarded extrinsic evidence of the parties' intent," including subsequent conduct, when the contract was unambiguous).

[23] Docket 24-1 at 1 (Section 8).

[24] Docket 21 at 7-8.

[25] *E.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 203 cmt. f.

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 6 of 17

the employment terms to which Rady Concrete was bound, the Compliance Agreement expresses the conditions under which the CBA applies. If Defendants are correct in their interpretation of the Compliance Agreement, then Rady Concrete "agreed to be bound" by the CBA only with respect to the one project identified in the Compliance Agreement. Plaintiffs similarly argue that the written notation should have been added to Section 8 of the Compliance Agreement. But Section 8, as explained above, refers only to the length of the agreement, and not to the number of projects which it will govern.

Although the "single job agreement" notation is not a model of clarity, neither is it ambiguous such that it cannot be enforced. It can have only one meaning: the obligations to which Rady Concrete was acceding were limited to the "single job" of the AHFC Fairbanks Site Improvements.[26] Plaintiffs essentially ask the Court to disregard this provision, but the Court must interpret the contract so that no provision "is rendered nugatory."[27] That Rady Concrete never took any action to "terminate" the agreement is a red herring: the agreement which he never terminated only ever applied to the single job; it continued only for as long as that job continued.

Plaintiffs no longer seek summary judgment on the basis of the Compliance Agreement; Plaintiffs now assert that "whether the contract was originally limited to one job" is "contested on the facts."[28] Defendants maintain that they are entitled to summary

---

[26] The Court notes that, even if the provision were ambiguous, the subsequent conduct would not be sufficient to demonstrate an intent to be bound as a matter of law. Such an inquiry would substantially mirror the analysis below with regard to the remittance forms, which the Court concludes do not evince an intent to be bound with regard to all projects.

[27] *Dupree*, 572 F.3d at 1097.

[28] Docket 39 at 1-2.

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 7 of 17

judgment as to their non-liability under the Compliance Agreement.[29] Neither party disputes the text of the Compliance Agreement itself, and because this text unambiguously limits the agreement to a single job, summary judgment for Defendants on this issue is appropriate. Accordingly, the Court will deny Plaintiffs' motion for summary judgment with regard to the Compliance Agreement, and will grant Defendants' motion for summary judgment with regard to the Compliance Agreement. The Compliance Agreement cannot form the basis of any liability beyond the single "AHFC Fairbanks Site Improvements" job, as noted in that agreement.

*B. Acceptance by Conduct*

Plaintiffs contend that Rady Concrete's liability also arises from its course of conduct after completion of the AHFC Fairbanks project. The Ninth Circuit recognized the validity of such an argument in 1987, noting in a footnote that "an employer may be held to have [adopted a CBA] by embarking on a course of conduct evincing an intention to be bound."[30] Whether a party's conduct "evinc[es] an intention to be bound" is necessarily a fact-intensive inquiry. The Ninth Circuit has discussed the type of conduct that satisfies this test in labor agreements in several cases. None is precisely on point,[31]

---

[29] Docket 34 at 1-2.

[30] *Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc.*, 823 F.2d 289, 295 n.8 (9th Cir. 1987).

[31] Indeed, some of the cases arise in the context of successor employer liability, which is not at issue here, and some relate to liability pursuant to provisions of the agreements clearly not at issue here, such as payment of a withdrawal fee; all involve the union as a plaintiff. The Ninth Circuit has also addressed obligations to a trust fund in an unpublished case. *See Trustees of S. Cal. Int'l Broth. of Elec. Workers v. DC Assocs., Inc.*, 381 Fed. Appx. 650, 652 (9th Cir. 2010) (finding a genuine dispute of fact existed as to employer's intent to be bound when employer had paid the union wage only for some employees and had a conflicting agreement with regard to other employees).

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 8 of 17

but the pattern that emerges from these cases and cases from other circuits is enough to delineate some basic principles.

In one case, the Ninth Circuit reversed a grant of summary judgment for the employer, concluding that where the employer had "voluntarily implemented the new terms" of the CBA, including implementing a wage increase, "a trier of fact could conclude" that the employer had adopted the agreement, even though it had not signed it.[32] In another case, the Ninth Circuit affirmed a grant of summary judgment for the employer, concluding that there was no intent to be bound when the employer had unequivocally repudiated a prior agreement, even though the employer continued to comply with that agreement while "retain[ing] the right to make changes that it deemed appropriate."[33] In a third case, the Court of Appeals rejected an argument that a successor employer had adopted the arbitration terms in an expired CBA when the employer continued to "maint[ain]" the "terms and conditions of employment, including the settling of employee grievances short of arbitration."[34] And in a fourth case, the Ninth Circuit held that summary judgment for the union was inappropriate because, although a successor employer had paid union wages, contributed to the trust and filed remittance reports, and requested employees from the union hall, the successor employer had also presented evidence that it contributed to the trust not pursuant to the CBA but pursuant to an

---

[32] *S. Cal. Painters & Allied Trade Dist. Council No. 36 v. Best Interiors, Inc.*, 359 F.3d 1127, 1133 (9th Cir. 2004).

[33] *Bay Area Typographical Union v. Alameda Newspapers, Inc.*, 900 F.2d 197, 200 (9th Cir. 1990).

[34] *Hospital and Institutional Workers Local 250 v. Pasatiempo Development Corp.*, 627 F.2d 1011, 1012 (9th Cir. 1980).

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 9 of 17

independent legal obligation.[35]

In *Brown v. C. Volante Corp.*, the Second Circuit found an employer had evinced an intent to be bound by two unsigned CBAs. There, the underlying agreement had expired and the employer had not signed a renewal. But the employer continued to submit signed remittance reports and payments, cooperated with an audit, paid union wages to employees, and, in a letter to the trust after the dispute arose, acknowledged "responsibility to the funds." The Second Circuit held that this was "sufficient, absent contrary evidence, to establish as a matter of law appellant's intent to adopt the two unsigned CBAs."[36]

In *Robbins v. Lynch*, the Seventh Circuit found that there was no genuine dispute of fact as to the employer's intent to be bound by an indisputably unsigned CBA when the employer had "paid the wages called for by [the CBA], made pension and welfare contributions per the agreement, negotiated and settled grievances under the terms of the agreement, and rendered to the local union the dues withheld from the pay of its members." The employer had also sent a letter formally terminating the (unsigned) agreement, implicitly acknowledging its continued vitality.[37] The Seventh Circuit has continued to apply these factors in subsequent cases.[38]

---

[35] *New England Mech., Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1344 (9th Cir. 1990). It appears that the successor employer was asserting that the independent obligation arose from the successor employer's purchase agreement with the prior employer.

[36] 194 F.3d 351, 355 (2d Cir. 1999).

[37] 836 F.2d 330, 331-32 (7th Cir. 1988).

[38] *See, e.g.*, *Bricklayers Local 21 of Illinois Apprenticeship & Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 766-67 (7th Cir. 2004) (identifying relevant factors as "the payment of union wages, the remission of union dues, the payment of fringe benefit contributions,

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 10 of 17

The Eleventh Circuit has looked to similar factors, finding an "intent to abide" by an industrywide CBA when the employer had "secured virtually all of its labor from the union hiring hall," paid its employees at the union scale, filed remittance reports and made payments to the trust, and cooperated in two audits by the trust.[39] And, more recently, the Fourth Circuit held that an employer was bound by a CBA when it had signed a separate "letter of assent" agreeing to make payments "as provided for by the [CBA] now existing and as hereafter" and then fully complied with the original CBA and the successor CBAs for thirteen years.[40]

The Fifth Circuit reached a different conclusion in *Firesheets v. A.G. Bldg. Specialists, Inc.*, where it found the employer had not evinced an intent to be bound and accordingly affirmed the grant of summary judgment for the employer. There, the employer had "continued to make contributions to the Trust Funds after the expiration date of the Agreement" and had "continued to file monthly contribution reports which included language stating that it was bound by provisions of the agreements."[41] While

---

the existence of other agreements evidencing assent and the submission of the employer to union jurisdiction, such as that created by grievance procedures," and particularly noting the employer's cooperation in a fund audit); *Operating Eng'rs Local 139 Health Benefits Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 650 (7th Cir. 2001) (noting that signed certifications in remittance reports, while not necessarily dispositive, are entitled to "*some* weight, and maybe a lot" in determining intent to be bound (citations omitted) (emphasis in original)).

[39] *Trustees of Atlanta Iron Workers, Local 387 Pension Fund v. S. Stress Wire Corp.*, 724 F.2d 1458, 1460 (11th Cir. 1983).

[40] *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 441, 448 (4th Cir. 2015). In that case, the issue was whether the employer had to pay a withdrawal fee when terminating the agreement; the employer argued it was never bound by the agreement at all, even though it had fully complied up to the time it tried to withdraw.

[41] 134 F.3d 729, 731 (5th Cir. 1998).

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 11 of 17

these would support an inference of an intent to be bound, the Court found that other conduct undermined that inference: the employer had hired nonunion employees, set its own wages, did not give holiday pay to employees, and had "made Trust Fund contributions only for those employees who asked for contributions."[42] This conduct was inconsistent with an intent to be bound, the Court concluded.[43]

With these cases in mind, the Court turns to the facts at hand. Here, both sides agree that Rady Concrete did not fully adhere to the CBA: Rady Concrete made contributions only for certain jobs and only for some hours.[44] But the evidence also indicates that Rady Concrete adjusted these payments to conform to the current version of the CBA.[45] And the Trust performed an audit of Rady Concrete in May 2013.[46]

---

[42] *Firesheets*, 134 F.3d at 731.

[43] *Id.* An unpublished Third Circuit case from 2012 similarly found that remittance forms and payments submitted only for "designated employees who requested the contributions" were insufficient to conclusively establish an intent to be bound. *N.J. Regional Council of Carpenters v. Jayeff Constr. Corp.*, 495 Fed. App'x 230, 234 (3d Cir. 2012).

[44] *See* Docket 33 at 3 ("Rady Concrete Construction did not make contributions to the Trusts for all hours. . . . Rady Concrete did not make contributions on projects that were not public works."); Docket 21 at 4 ("Rady Concrete did not list all cement finisher employees on its remittance reports . . . . Rady Concrete reported and paid employee benefit contributions on only those employees who were working on Davis Bacon projects or prevailing work projects."). The extent of its compliance with other terms of the CBA is unclear.

[45] *Compare, e.g.*, Docket 24-4 at 2 (Aug. 2011 Report) ("Health" payments at rate of $5.41 per hour), *with*, Docket 24-4 at 16 (Aug. 2013 Report) ("Health" payments at rate of $6.91 per hour). *See also* Docket 23 (Giles Aff.) at ¶ 6.

[46] *See* Docket 21 (Mot.) at 4. This assertion is not supported by a citation to any evidence, *cf.* FED. R. CIV. P. 56(c)(1), but Defendants acknowledged during oral argument that an audit by the Trust had taken place.

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 12 of 17

Plaintiffs have also presented unrebutted evidence that Rady Concrete submitted numerous remittance forms and accompanying payments.[47]

The Court finds that no reasonable trier of fact could find that the sum of Rady Concrete's conduct established an intention to be bound to the CBA as to all work. First, although the signed remittance forms might deserve "some weight, or even great weight," many of the forms were not signed. And, more importantly, Rady Concrete's adherence to the terms of the CBA was inconsistent at best. As both parties acknowledge, Rady Concrete submitted no contributions at all for certain work. Correspondingly, Rady Concrete submitted no remittance forms at all for that work. Thus, unlike in *Best Interiors* or *Plumbing Services*, Rady Concrete had not "voluntarily implemented" or "fully complied with" the agreement—it had instead applied certain aspects to select employees for select projects. These facts are more like those in *Alameda Newspapers*, where the employer continued to adhere to the agreement, but reserved the right to—and here Rady Concrete in fact did—unilaterally change its terms, or like the facts in *Firesheets*, where the employer submitted remittance payments only for the employees that asked for contributions. Rady Concrete's undisputed conduct—indeed, the very conduct which the Trust faults—is not consistent with an intent to be fully bound to the terms of the CBA.

In light of the foregoing, the Court holds that Rady Concrete cannot be held liable to the CBA as to the work for which remittance forms were never submitted.

---

[47] *See* Docket 24-4 (Remittance Reports).

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 13 of 17

*C. Remittance Forms Liability*

This does not end the matter, however. The Trust also contends that, even if Rady Concrete is not generally bound to the CBA, it is obligated under it at least with respect to those projects for which it submitted remittance reports.[48] But these reports come in two types: signed and unsigned.

As to the signed remittance forms, the Court agrees with Plaintiffs that these bind Rady Concrete to make contribution payments with respect to those projects. On these forms, Mr. Rady signed the certifications as CEO of Rady Concrete. These certifications provide that "The undersigned Employer agrees to be bound by the Trust Agreements."[49] By signing his name, Mr. Rady unquestionably bound Rady Concrete to those agreements for those projects. The Court finds that no reasonable trier of fact could conclude that Rady Concrete had not agreed to be bound to the agreements with respect to the work underlying the signed remittance agreements.

But the evidence is not conclusive as to the unsigned remittance forms. While a fact-finder might conclude that by submitting the forms with a remittance check Rady Concrete evinced an intent to be bound, a fact-finder might also find that other relevant facts—including the apparently union-official–approved underreporting of hours—indicate Rady Concrete did not intend to be bound. Thus, while the signed remittance forms are entitled to "some weight, and maybe a lot," the unsigned remittance forms are entitled to far less.[50]

---

[48] *See* Docket 39 at 2.

[49] *See* 24-4 at 1 (Ex. D, Remittance Reports).

[50] *Operating Eng'rs Local 139 Health Benefits Fund v. Gustafson Constr. Corp.*, 258 F.3d 645,

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 14 of 17

Based on the foregoing, the Court holds that Rady Concrete is liable to the Trust for all projects for which it submitted *any* signed remittance forms—even if it later also submitted unsigned forms for those projects. But the Court holds that there is a genuine dispute of fact as to Rady Concrete's intent to be bound with regard to projects for which it submitted *only* unsigned forms.

*D. Defendants' Cross-Motion*

Defendants moved for summary judgment on the issue of liability, and also for summary judgment with regard to their right to recover payments made subsequent to the AHFC Fairbanks Site Improvements project. The Court has already noted above that Rady Concrete's liability cannot be premised on the Compliance Agreement; its liability is established with regard to the projects for which signed remittance forms were submitted; that a dispute of fact precludes ruling on liability with regard to the projects associated with only unsigned remittance forms; and that Rady Concrete cannot be liable with regard to projects for which no remittance form was submitted. Accordingly, Defendants' motion will be granted in part and denied in part with regard to Rady Concrete's liability.

The Court will deny Defendants' motion with regard to its right to recover payments made subsequent to the AHFC Project. Although the Compliance Agreement did not oblige Rady Concrete to make the subsequent payments, neither did it preclude liability premised on separate agreements. And, generally, an employer may recover payments

---

650 (7th Cir. 2001) (noting that signed certifications in remittance reports, while not necessarily dispositive, are entitled to "*some* weight, and maybe a lot" in determining intent to be bound (citations omitted)).

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 15 of 17

made to a trust only if made pursuant to a mistake of law or fact.[51] Defendants have not cited to any evidence indicating that there was such a mistake.[52] Moreover, as the Ninth Circuit held in a 1996 case, "[t]he right to a refund is not automatic . . . even if the employer can demonstrate the requisite mistake of fact or law; the employer must also show that the equities favor restitution."[53] There, the Court held that the equities did not favor restitution. Here, just as in *Lopshire*, Defendants' "employees received the benefits for which [Rady Concrete] made contributions, and [Mr. Rady] himself obtained the benefits of economic peace with the union. The Trust Funds relied on the continuing contributions by [Rady Concrete] and provided the benefits received by [Rady Concrete's] employees."[54]

## CONCLUSION

Therefore, IT IS ORDERED that Plaintiffs' Motion for Summary Judgment at Docket 20 is GRANTED in part and DENIED in part. Plaintiffs' motion is GRANTED as to Rady Concrete's liability with respect to the projects for which Rady Concrete submitted any signed remittance forms. Plaintiffs' motion is DENIED in all other respects.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment at Docket 34 is GRANTED in part and DENIED in part. Defendants' motion is GRANTED

---

[51] *See* 29 U.S.C. § 1103(c)(2)(A)(ii).

[52] *See* Docket 33 (Opp.) at 7-8; Docket 34 (Mot.) at 1-2.

[53] *Alaska Trowel Trades Pension Fund v. Lopshire*, 103 F.3d 881, 885 (9th Cir. 1996) (citing *Award Serv., Inc. v. Northern Cal. Retail Clerks Unions & Food Employers Joint Pension Trust Fund*, 763 F.2d 1066, 1069 (9th Cir.1985)).

[54] *Lopshire*, 103 F.3d at 885.

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 16 of 17

with respect to there being no liability under the June 1, 2009 Compliance Agreement beyond the completion of the AHFC Fairbanks project or with respect to projects for which no remittance forms at all were submitted. It is DENIED in all other respects.

DATED this 2nd day of November, 2016, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:15-cv-00061-SLG, *Alaska Trowel Trades Pension et al. v. Rady Concrete et al.*
Order re Motions for Summary Judgment
Page 17 of 17